**REPROSYSTEM, B.V. and N. Norman Muller, Plaintiffs,**

v.

**SCM CORPORATION, Defendant.**

**No. 77 Civ. 5705 (RWS).**

United States District Court,
S.D. New York.

Aug. 27, 1982.

On Further Consideration of Damages
Dec. 22, 1982.

See also D.C., 522 F.Supp. 1257.

Hale, Russell & Gray, New York City, for plaintiffs; Selvyn Seidel, Stephen Gillers, Mark I. Silberblatt, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant; Peter Fleming, Jr., Bradley Tyler, New York City, of counsel.

OPINION

SWEET, District Judge.

A post trial hearing was conducted on June 2, 22 and July 1, 1982 at which evidence was presented with respect to the calculation of damages to be awarded by way of judgment in favor of plaintiffs Reprosystem B, B.V. ("Reprosystem") and N. Norman Muller ("Muller") against defendant SCM Corporation ("SCM"). Judgment will be entered in accordance with this memorandum opinion on notice within ten (10) days of the date hereof.

*Prior Proceedings*

On June 30, 1981 an opinion was filed which determined the liability issues raised in Reprosystem's action against SCM arising out of SCM's failure to transfer its European copier assets to Reprosystem. Certain issues as to the calculation of damages remained outstanding and a further opinion was issued on September 15, 1981 on that subject. The effect of taxes on the damages calculation became a principal issue, since the judgment to be entered sought to award Reprosystem the profit which SCM had garnered by its conduct, held to be a breach of its duty. The difficulty, of course, arose because the transaction upon which Reprosystem sued did not in fact take place, and the tax effect on the theoretical transaction became more difficult to determine. Reprosystem sought recovery for pre-tax profits, while SCM urged that the post tax profits constituted the proper measure of damages under the June opinion.

The September 15, 1981 memorandum opinion sought to deal with the issue by stating:

Thus, borrowing the traditional unjust enrichment analysis, it would be inappropriate for SCM to have to disgorge to plaintiffs a sum representing taxes paid on the profits while this court has held

SCM unjustly retained. This deduction for taxes will be allowed.

As subsequent events have established, "taxes paid" became as difficult to determine as a consequence of the change in circumstances and the difference between tax treatment in the United States and Europe as the original liability issues had been.

Discovery was conducted, a hearing was held and on March 31, the court issued yet another memorandum opinion on the subject of damages and taxes, concluding that a factual hearing would be required to establish the amount of German and French taxes paid attributable to the period as well as the effect of certain currency transactions. Reprosystem's claim that SCM should also pay over a judgment tax was rejected. More discovery took place, and a final hearing was held on June 2, 22 and July 1, 1982 as recounted above.

By and large the amount of gross profits for the period in question have been determined. These amounts will be affected by the treatment to be accorded the following items.

(1) the $25,107 attributable to income of the Chur.

(2) The $191,000 adjustment to the profits of its French subsidiary for the period from August 25 to August 31, 1976 ("the French adjustment").

(3) The $171,000 interest accrued to the German subsidiary as a result of the intercompany loan to the Canadian subsidiary ("the Canadian transaction").

(4) Foreign currency adjustments.

(5) The $55,000 attributable by SCM to a corporate assessment ("the SCM corporate assessment").

(6) The $196,000 SCM claims is payable and therefore deductible on the assets of the foreign subsidiaries ("the SCM interest").

(7) The tax deductions for
  (a) United Kingdom and Belgium.
  (b) Chur
  (c) Switzerland
  (d) Germany
  (e) France

As to the overall income calculation, I conclude on the evidence submitted that Chur subsidiary profits were mistakenly overstated by $25,107.

The French adjustment of $191,000 must be determined on the basis of the allocation of the burden of proof. The change between the August 25 and 31 figures is dramatic and is based solely upon a one-page revision without any evidence adduced from books of original entry. However, this revision went unchallenged by Reprosystem's accountants in the fall of 1976, and no direct evidence has been adduced to support a conclusion, urged by Reprosystem, that the revision was unjustified. Although there is evidence that the treatment given by SCM is atypical, there has been no direct challenge to the original records which have been produced. Contrary to Reprosystem's contentions, I conclude that the burden of proof did not shift after the decision on liability was reached and that the plaintiffs have failed to establish that the SCM revision was other than what it was represented to be, either in 1976 or today. Were more evidence available, the result might well be otherwise.

The Canadian transaction resulted when the German subsidiary accrued interest on a loan which it had made to the Canadian SCM subsidiary. Regardless of how this asset would have been treated upon the completion of the transaction, in the meantime, interest, either paid or accrued by a subsidiary, was an appropriate item for profit determination and was so considered by SCM with respect to all other interest items. This reduction in income was first raised by SCM after Egli's year end examination and was not explained satisfactorily to Reprosystem in January, 1977. Consistency requires that the Canadian interest be added to the income of the German subsidiary. A concomitant of the determination on the Canadian transaction is that any currency adjustment for such a transaction must also be allowed as well as the $17,000 conceded by Reprosystem.

The corporate assessment and the SCM interest were never paid by the subsidiaries and were SCM adjustments rather than entries on the subsidiaries' books. These deductions are not appropriate in this context, for there is no evidence that they would have been made had the transaction gone forward.

No taxes claimed by SCM were actually paid by the United Kingdom, Belgium or Chur subsidiaries and therefore none are deductible from the profits of those subsidiaries. As to Switzerland, SCM has failed to establish that taxes were paid or that reserves for taxes were established on the books of the subsidiary during the relevant period.

The problem is heightened with respect to France and Germany where no taxes were actually paid during the period, attributable to the period, but rather were paid or assessed at a later period. To fix the amount of tax attributable to the damage period becomes a theoretical calculation which varies depending on whether United States, French or German accounting principles are applied, what taxes are considered, and even which books of account are to be employed.

Since it was contemplated that Reprosystem would take over the French and German subsidiaries, less the typewriter assets, the tax liability for the period when ultimately decided, would have served to reduce its profit. Reprosystem has adduced no testimony to conflict with that presented by SCM as to the tax liability which would have ultimately accrued for the German and French subsidiaries during the damage period and the SCM calculation for German taxes paid will be employed in calculating damages.

With respect to the French subsidiary the taxes paid for fiscal 1977 are known and can be attributed mathematically to the damage period. What appears to be at issue is the profit calculation against which this deduction is to be made. This figure should be calculated in the same fashion that was employed in the preparation of the "flash reports" and adjustments for profits

earned agreed upon by the parties during the damage period.

Submit judgment on notice within ten (10) days.

IT IS SO ORDERED.

## ON FURTHER CONSIDERATION OF DAMAGES

Yet another memorandum opinion is required on the subject of damages in the context of judgments proposed by the parties. Familiarity with past orders, opinions and terminology used by the parties and the court is assumed.

The most meaningful item in contention is the $448,000 which according to SCM represents the currency adjustment which would have been required by its German subsidiary with respect to the intercompany loan to the Canadian subsidiary. Of course, this is a non-copier asset and as such, would not have been part of the transaction, had it gone forward. According to the affidavit submitted by SCM in support of its proposed judgment and its previously submitted supplemental memorandum on damages:

... SCM properly accounted for these transactions in accordance with its own internal procedures and with generally accepted accounting principles. Further, SCM properly accounted for these transactions within the context of the damages calculation in that they did not credit the plaintiff with the interest income earned by the non-copier assets nor did they charge the plaintiff with the expense of currency devaluation.

In my last effort to reconstruct the profit determined to be owed Reprosystem, I included the Canadian interest based upon the SCM treatment of interest as an income item, had the funds remained in Germany, and the difficulty of determining whether the source of the funds were indeed copier assets. In my August 27, 1982 opinion, I also recognized the concomitant effect of any currency adjustment applicable to the Canadian transaction. Of course, these determinations were reached against a back-

ground which includes the parties' inability to understand or agree upon these items at the time of the discussions in January, 1977 when the Canadian transaction first came under consideration.

Because I have previously found that the parties intended the copier business of the subsidiaries to be run for Reprosystem's benefit during the period in question, I now conclude that my decision of August 27, 1982 with respect to the Canadian transaction and the treatment of the interest income was in error, particularly when the skewing effect of the one-time currency adjustment is considered. In the absence of any contemporaneous evidence as to the treatment of the income from the Canadian loan or as to the date for any currency adjustment, and finally, considering the uncertainty as to the copier source of funds, I now conclude that the interest on the Canadian loan and the currency adjustment both should be excluded from the calculations.

The $35,000 difference between the parties with respect to currency conversion results from a theoretical adjustment which SCM seeks to apply to assets not disposed of during the relevant period, but which it maintains should be devalued thus creating a loss which would reduce the profit owing to Reprosystem. It must be assumed that had the transaction gone forward, the valuation of the assets to be disposed of would have been adjusted by any required currency conversion thus affecting Reprosystem's profit during the relevant period. Again, of course, the evidence does not reveal what happened but points to the practice which would have been adopted. Reprosystem has pointed to no evidence to offset what is alleged to be SCM's standard accounting practice in the regard. The profit will thus be reduced by $35,000 as urged by SCM.

The German taxes paid calculation of SCM is $249,000 and Reprosystem urges that the correct figure is $235,000. The difference between the two amounts is principally the inclusion of the audit adjustment payment (a subsequently determined adjustment to the previously calculated tax) and a trade tax and capital tax not previously considered. Of course, these adjustments were not taxes paid during the period but they are accurate statements of taxes payable for the period. As such, I consider them proper deductions and therefore the final judgment will be determined on the basis of SCM's calculations for the German taxes paid.

No change is warranted in SCM's calculation for taxes paid in France. Also, the matter of pre-judgment interest has previously been determined against Reprosystem.

Thus judgment will be entered on the following basis:

| | Total profits earned by copier companies September 1, 1976 to February 4, 1977 | $ 1,708,000 |
| less | New York expenses | 131,000 |
| less | "Taxes paid" by German subsidiary | 249,000 |
| less | "Taxes paid" by French subsidiary | 266,000 |
| | Total | $ 1,062,000 |

Judgment to be entered in accordance with this latest, and hopefully last, memorandum on this issue.

IT IS SO ORDERED.